### EX PARTE WILL OWIN.

No. 10611.   Delivered November 10, 1926.

**Habeas Corpus—Application for Bail—Granted.**

Where, on a habeas corpus hearing asking for bail, the evidence as to the vital issues is so conflicting that it would be necessary for this court to determine these conflicts against the appellant to warrant a denial of bail, the proof is not evident, and bail will not be denied. The judgment is reversed and bail granted in the sum of $10,000.00.

Appeal from the Criminal District Court of Dallas County. Tried below before the Hon. Felix D. Robertson, Judge.

Appeal from an order denying appellant bail pending an indictment for murder.  Bail granted in the sum of $10,000.00.

The opinion states the case.

*Hughes & Monroe* of Dallas, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—This is an appeal from the order of the District Judge refusing bail.

The indictment charges that the relator murdered his wife, Edna Owin.  They were not living together.  Mrs. Clark and the deceased, Edna Owin, occupied one side of a duplex apartment, and the other side was occupied by Mrs. Burge, Mrs. Hanlan and her daughter.  The homicide took place about nine o'clock at night.  Mrs. Owin apparently had been out in the city.  She returned to the apartment and called for Mrs. Clark to open the door.  Two of the occupants of the other side of the apartment were upon the porch; another was inside at the window.  Immediately after Mrs. Owin called to Mrs. Clark, a man came from her apartment with a pistol and shot her several times, dragged her to the porch and carried her into the house, where the circumstances indicated that he struck her a number of times and then fled.  Upon the arrival of the officers, the deceased was still living, and in reply to an inquiry said in substance that Will Owin, her husband, did not do it.  One of the women who was on the porch testified that she recognized the appellant as the assailant.  The other two could not identify him.  He was a one-armed man.  Strangers who passed and observed a part of the tragedy failed to notice the loss of the arm.  They stated circumstances and gave as their best judgment that the assailant was not a one-armed man.  There was testimony leading to the conclusion that the deceased was on intimate terms with two other men; that one of them practically lived with her; and that on the day of the tragedy she had been out with the other and had engaged in drinking beer.  There was also testimony that she had had frequent quarrels with the man who lived with her and that he had on some occasions assaulted her; that she had also had quarrels with her husband.  According to the testimony of Mrs. Clark, on the day of the tragedy, she was at the home of a neighbor; that later in the evening she was called over the telephone by a man who, she said, had been living with

the deceased; that in the conversation he discussed the fact that the deceased was out with another man; that he could not put up with it; that she was running him crazy and that she was going to make him kill her. He used other expressions of a similar nature. According to Mrs. Clark, the party mentioned inquired when the deceased would return, and said: "I am coming out there and am going to hang around until I see her." This witness also said that it was the custom to put the key to the apartment at a certain place which was not known to the appellant but was known to the paramour of the deceased.

Several witnesses testified to an alibi of the appellant and there was testimony that he had gone to a picture show with a woman and was seen there by several persons; that he went there before the tragedy and remained until after it was over.

No attempt has been made to recite all of the evidence. However, it has been carefully examined, and the conclusion is expressed that bail should not have been denied. If it be assumed that this court would not, on the evidence adduced, overturn a verdict assessing the death penalty, the accused might still be entitled to bail pending a trial. On appeal from a conviction, all controverted questions on matters of fact would, by the reviewing court, be considered settled against the accused by the verdict. Not necessarily so upon an application for bail where, as in the present case, a vital criminative fact, namely, the identity of the assailant, is a subject of conflict so marked as is revealed in the present record. On this subject, in another case, it was said:

"As the matter is now presented, the truth of practically all of the criminating facts is controverted, and to hold the proof evident, it would be necessary for this court to determine these conflicts against the appellant and to draw the conclusion that a jury, in the due administration of justice, would probably convict the appellant of a capital crime and assess the punishment accordingly. In our opinion, under the facts of this case it is the right of the appellant to have bail pending the decision by a jury which of the conflicting facts are established and whether inference of guilt would be drawn from them." (Ex parte Young, 87 Tex. Crim. Rep. 415.)

The judgment is reversed and bail allowed in the sum of $10,000.00.

*Reversed and bail granted.*